[In Bank—June 6, 1883.]

## CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT, v. THE CENTRAL PACIFIC RAILROAD COMPANY, APPELLANT.

TAXATION—ASSESSMENT OF STEAMERS OF RAILROAD CORPORATION.—The steamers used by the Central Pacific Railroad Company in transporting its freight cars across the bay of San Francisco, are not included in the property defined by the tenth section of article 13 of the State Constitution—the franchise, roadway, road bed, rails, and rolling stock of railroads operated in more than one county in the State—and should be assessed by the local assessors, not by the State board of equalization.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are sufficiently stated in the opinion of the court.

*McAllister & Bergin*, for Appellant.

*Walter H. Levy*, for Respondent.

THORNTON, J.—The decision in this case is as follows:—

"*First*—That the assessments mentioned in the complaint in said action were made in due form, and at the proper time, by the assessor of the city and county of San Francisco; and all the forms of law in relation to the assessment of property for taxation in said county have been complied with on the part of said assessor.

"*Second*—That the defendant is a corporation existing under the laws of the United States, and of this State, and as such is now, and for many years last past has been, the owner of a line of railroad known as the Central Pacific Railroad, extending from a point in the city of San Francisco, in the State of California, to Ogden, in the Territory of Utah; that the length of said road in the city and county of San Francisco is four miles from a point within said city to the eastern shore of the southern arm of the bay of San Francisco; that from said point on the eastern shore of the bay of San Francisco, to a point on the western shore of said bay, where the railway of defendant again commences, is about twelve miles; that across said bay no line of railroad has been constructed; and freight and passengers carried upon said road are taken across said bay upon steam ferry-boats; that, for more than four years last past, the defendant has owned and possessed the two steamers, to wit, the *Thorough-fare* and *Transit*, mentioned in plaintiff's complaint; that said steamers now are, and ever have been, respectively, of the burden of one thousand five hundred and sixty-six and one thousand and twelve tons, and are vessels entitled to be and are, and for more than four years last past have been, enrolled and registered in the port and harbor of San Francisco; that upon the decks of said vessels are laid railroad tracks, and the said vessels now are, and for more than four years last past have been, exclusively used for the purpose of transporting the cars of the defendant, and used in operating the said railroad across said bay of San Francisco, from the road of defendant on the eastern shore to the same upon the western shore and for no other purpose.

"And as a conclusion of law, from the foregoing facts, the court finds that the plaintiff is entitled to judgment against the defendant herein for the sum of $1,039.70 and costs.

"And judgment therefor is hereby rendered and directed to be entered."

The sole question presented for decision herein is whether the steamers *Thoroughfare* and *Transit* mentioned in the above findings are to be assessed by the assessor of the city and county of San Francisco or by the State board of equalization.

The property to be assessed by the board is defined in the

10th section of article ix. of the Constitution of 1879. It is the franchise, roadway, road-bed, rails, and rolling stock of all railroads operated in more than one county in the State.

All property, other than the above mentioned is to be assessed by the local assessors. Are the steamers above named embraced within the category of property named in the section above referred to? The relation of such steamers to the Central Pacific Railroad Company is set forth in the findings. They are certainly not the franchise of the defendant corporation. They may constitute an element to be taken into the computation, to arrive at the value of the franchise of such corporation, but they are not such franchise. It is equally as clear that they are not rails or rolling stock. These words are to be construed according to their ordinary and popular meaning, and we do not think that it would be contended that rails or rolling stock in their ordinary and popular signification include the steamers above mentioned. Are they then embraced within the words roadway or road-bed, in the ordinary and popular acceptation of such words, as applied to railroads? These two words as applied to common roads, ordinarily mean the same thing, but as applied to railroads their meaning is not the same. The *road-bed,* referred to in section 10, in our judgment, is the bed or foundation on which the superstructure of the railroad rests. Such is the definition given by both Worcester and Webster, and we think it correct. The *roadway* has a more extended signification as applied to railroads. In addition to the part denominated road-bed, the roadway includes whatever space of ground the company is allowed by law in which to construct its road-bed and lay its track. Such space is defined in subdivision 4 of the 17th section and the 20th section of the act "to provide for the incorporation of railroad companies, etc., approved May 20, 1861 (Stats. 1861, p. 607; *S. F. & N. P. R. R. Co. v. State Board,* 60 Cal. 12.)

With these views of the signification of the words roadway and road-bed, we do not think they include the steamers above named, and therefore, we are of opinion that the assessment of the steamers above mentioned pertained to the local assessor, and was properly made by the assessor of the city and county of San Francisco.

Judgment affirmed.

MYRICK, J., McKEE, J., McKINSTRY, J., and SHARPSTEIN, J., concurred.