[L. A. No. 2431.   In Bank.—September 30, 1910.]

## ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES, Respondent.

TAXES—ASSESSMENT OF RAILROAD PROPERTY BY STATE BOARD—ACTUAL RIGHT OF WAY—ADDED LANDS NOT A PART.—Where the actual right of way of a railroad company consisted only of a continuous strip thirty feet wide, with here and there added lands contiguous to this strip, such added lands formed no part of the right of way, consisting of the "roadway, roadbed, and rails" of a railroad operated in more than one county in the state, assessable by the state board of equalization under section 10 of article XIII of the constitution.

ID.—PROPERTY ASSESSABLE BY COUNTY ASSESSOR—ADDED LANDS—SIDE TRACKS, SPURS, AND SWITCHES—POSSIBLE RIGHT OF WAY IMMATERIAL.—The county assessor properly assessed such added lands, and also side tracks, switches, spurs, and passing tracks, situated outside of the actual right of way thirty feet in width; and the fact that most of such property fell within a possible right of way permitted to be nine rods in width by subdivision 4 of section 465 of the Civil Code, is immaterial.

ID.—DEFINITION OF "RIGHT OF WAY."—The "right of way" of a railroad company is the continuous strip of land, not exceeding in width the nine rods permitted by law, which the company acquires and uses for the construction and maintenance of its roadbed and railroad track.

ID.—CONDEMNATION OF LANDS—PRESUMPTION AS TO WIDTH—INAPPLICABILITY TO ASSESSMENTS. — The rule in a proceeding to condemn lands for a proposed right of way for a railroad, that when its width does not appear, it will be presumed to be intended for the full *statutory* width, has no application to the respective powers of the state board of equalization and county assessor, in relation to ascertained railroad property.

ID.—CONSTITUTIONAL POWER OF BOARD OF EQUALIZATION—EXCEPTION TO GENERAL RULE.—The power of the board of equalization to assess railroad property depends wholly upon the constitutional grant of powers thereto, and constitutes only an express exception to the general rule which requires all property to be assessed locally. It is only where the property comes under the head of "franchise, roadway, roadbed, rails, and rolling-stock" of a railroad operated in more than one county in this state, that it can be assessed by the state board of equalization. All other property of such a railroad must be assessed locally.

ID.—"RAILS" NOT INCLUDING LOCAL "SPUR TRACKS AND SWITCHES."— Within the general term "rails" is not included local spur tracks and switches, even if they are upon the actual roadway.

ID.—GENERAL AND LOCAL CLASSIFICATION—NECESSITY OF USE FOR RAILROAD PURPOSES NOT A CRITERION.—The general and local classification of railroad property for the purposes of general and local assessment, is made entirely regardless of the question as to the necessity of the use of the property for the purposes of the railroad. The general class contains only such property as may be fairly said to be substantially the same both in quantity and value for the whole length of the road; while in the other it is all such property as may fairly be considered purely local.

ID.—LOCAL ASSESSMENT—"NINE-ROD RIGHT OF WAY"—ASSESSOR NOT ESTOPPED.—The fact that the county assessor in the description of the property in some instances assessed the side tracks as being on the "nine-rod right of way," cannot be regarded as any admission or estoppel against the city. The assessor would have no power to make such an admission or to raise such an estoppel, and such language of description merely would not be held to create an estoppel.

ID.—ACTION TO RECOVER TAXES PAID UNDER PROTEST.—In an action to recover from the county taxes paid by the plaintiff under protest, upon a lower assessment made by the county assessor, it appearing that the assessment was valid in all respects, the judgment against the plaintiff must be affirmed.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, A. H. Van Cott, and U. T. Clotfelter, for Appellant.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy, for Respondent.

MELVIN, J.—The action was to recover from the county of Los Angeles taxes paid by plaintiff under protest. Appellant's contention is that the taxes were illegally levied, assessed, and collected; its argument in this regard being that all the property locally assessed is within the purview of section 10 of article XIII of the constitution, a part of "the franchise, roadway, roadbed, and rails" of a railroad operated in more than one county in the state, and was, therefore, assessable by the state board of equalization. Further, that all of this property was situated within or upon and was a part of the nine-rod right of way permitted to railroads. (Civ. Code, sec. 465, subd. 4.)

The complaint charged in separate counts. The first touched the assessment of certain pieces of real estate claimed to be a part of the nine-rod right of way. Generally speaking, the contention is not that the railroad owned a continuous right of way nine rods wide, the fact being that its roadway was but thirty feet wide, but that the lands were contiguous to the thirty-foot strip and within the limits of nine rods and should thus be held to be within the nine-rod right of way contemplated by the statute. As to these parcels of land the court found that upon one the plaintiff maintained a freight depot for the accommodation of its local business in the city of Pasadena, together with certain spur tracks necessary for the depot; that upon the second there stood a fruit packing-house having a spur track for its convenient use; upon the third the plaintiff maintained a passenger depot for the accommodation of its local business in the city of Pasadena, and a small park consisting of grass, flower beds, and shrubs; that upon the fourth plaintiff maintained a freight depot for the purpose of handling freight to and from the city of Pasadena; upon the fifth a passenger depot for the accommodation of local travel in the city of Pasadena; and that the sixth parcel contained no tracks or other improvements and was used solely for the storage of tools for use upon the railroad.

A second cause of action bore specific relation to sidetracks, switches, spurs, and passing tracks upon the nine-rod right of way, while the third cause of action dealt with sidetracks or spur tracks not within the nine-rod right of way. As to all these the court found in effect that they were not a part of the right of way, roadbed, or rails of the main line but were

used for local purposes, and so upheld the assessment of the county assessor.

Plaintiff's contention to the effect that because the law permits it a nine-rod right of way, all of its lands within such boundary must be considered as part of its right of way, is erroneous. Plaintiff's right of way in this instance happened to be a continuous strip but thirty feet wide with here and there added lands contiguous to this strip. These added lands did not form part of the "right of way." As said in *San Francisco & San Joaquin Valley R. R. Co.* v. *City of Stockton,* 149 Cal. 87, [84 Pac. 771] ; "roadway" is synonymous with "right of way." "The only remaining class of property named in the constitutional provision is 'roadway.' . . . This court has said that it is synonymous with 'right of way,' and includes 'whatever space of ground the company is allowed by law in which to construct its roadbed and lay its track' (*S. F.* v. *C. P. R. R. Co.,* [63 Cal. 467, 49 Am. Rep. 98]), which is but another way of saying that it is the continuous strip of land not exceeding in width the nine rods permitted by law (Civ. Code, sec. 465, subd. 4), which the company acquires and uses for the construction and maintenance of its roadbed and railroad track. Said strip is, of course, ordinarily wider than the actual roadbed, and portions thereof are often used at points along the line for other than roadbed purposes, but as long as all improvements thereon other than roadbed and rails are locally assessed, the property remaining for assessment by the state board, although it may have originally cost more in one place than in another, is, considering its use for railroad purposes, substantially of the same value the whole length of the road."

The cases which appellant cites in support of its contention arose over questions between the companies and landowners in relation to the width of the right of way which the companies had acquired by condemnation or grant, and it was held under the circumstances in each case that no limitation upon the width of the right of way appearing it would be presumed that it extended to the full width permitted by statute. These cases are clearly inapplicable to a question of the relative and respective powers of the state board of equalization and of county assessors to assess railroad property. The question has recently received elaborate consideration from this court in

the case last above cited. It is in that case pointed out that the question as to which is the proper body or person to assess depends entirely upon the language of the constitution; that the assessment by the board of equalization is an exception to the general rule requiring all property to be assessed locally, and that it matters not, therefore, how convenient, how useful, or, indeed, how necessary to the functions of an operating railroad any particular property may be it is to be locally assessed unless it comes within the category of franchise, roadway, roadbed, rails, or rolling-stock. Within the general terms of "rails" will not be included spur tracks and switches, even upon the actual roadway. "Under this construction of our constitutional provision we have two general classes of railroad property for purposes of assessment, made entirely regardless of the question as to the necessity of the use of the property for the purposes of the railroad. One contains only such property as may fairly be said to be substantially the same both in quantity and value, the whole length of the road, while in the other is all such property as may fairly be considered purely local." The fact that the assessor in his description of the property in some instances assessed the sidetracks as being on the "nine-rod right of way" cannot, of course, be regarded as any admission or estoppel against the city. The assessor would have no power to make such an admission or to raise such an estoppel in the first place, and in the second place, the language is language of description merely, and would not be held to create an estoppel even if an estoppel might thus be raised.

The judgment appealed from is therefore affirmed.

Angellotti, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.